# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>**THE SPORTS AUTHORITY HOLDINGS, INC.**, *et al.*,[1]<br><br>                    **Debtors.** | Case No. 16-10527 (MFW)<br>(Jointly Administered)<br><br>Chapter 11 |
| **O2COOL, LLC**, a Delaware limited liability company,<br><br>                    **Plaintiff,**<br><br>     v.<br><br>**TSA STORES, INC.; BANK OF AMERICA, N.A.; WELLS FARGO BANK, NATIONAL ASSOCIATION; WILMINGTON SAVINGS FUND SOCIETY, FSB; YUSEN LOGISTICS (AMERICAS) INC.; and OOCL (USA), INC.**<br><br>                    **Defendants.** | Adv. No. 16-_____ |

## COMPLAINT

Plaintiff, O2Cool, LLC ("O2Cool"), by and through its undersigned counsel, for its Complaint against Defendants (collectively, the "Defendants"), TSA Stores, Inc. ("TSA Stores"); Bank of America, N.A., as Administrative and Collateral Agent ("BofA"); Wells Fargo Bank, National Association, as FILO Agent (the "FILO Agent"); Wilmington Savings Fund Society, FSB, as successor administrative agent (the "Prepetition Term Loan Agent;" together with BofA and FILO Agent, the "Lenders"); Yusen Logistics (Americas) Inc. ("Yusen"); and OOCL (USA), Inc. ("OOCL"), respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664) (collectively, the "Debtors").

{C0496197.1 }

## PARTIES

1. O2Cool is a Delaware limited liability company with its principal place of business located at 168 North Clinton Street, Suite 500, Chicago, Illinois 60661. O2Cool is a leading designer, manufacturer and distributor of creative consumer products that solve unique problems, specializing in cooling, hydration and patio, pool & beach solutions.

2. TSA Stores is a debtor-in-possession in the above-captioned jointly administered chapter 11 proceeding pending in the United States Bankruptcy Court for the District of Delaware. Its principal place of business is located at 1050 West Hampden Avenue, Englewood, Colorado 80110. TSA Stores is wholly owned by The Sports Authority, Inc. ("TSA") and, prior to its liquidation, was the primary operating entity engaged in the business of selling retail sporting goods and apparel to the general public.

3. BofA is a national banking association. On information and belief, certain of the Debtors are parties to that certain Second Amended and Restated Credit Agreement dated as of May 17, 2012 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition ABL Credit Agreement") by and among TSA and TSA Stores as borrowers, Slap Shot Holdings, Corp. ("Slap Shot") and TSA Gift Card, Inc. ("Gift Card") as guarantors, BofA as Administrative Agent and Collateral Agent, and the revolving lenders party thereto, which provided for up to $650 million in aggregate loans in the form of an asset-based revolving credit facility.

4. FILO Agent is a national banking association. On information and belief, certain of the Debtors entered into that certain Second Amendment to the Prepetition ABL Credit Agreement which added to the Prepetition ABL Credit Agreement a $95 million first-in, last out term loan tranche (the "FILO Loan") with FILO Agent as agent for certain additional lenders as to the FILO Loan, subject to relative collateral priorities set forth therein.

5. The Prepetition Term Loan Agent is a full-service bank based in Wilmington, Delaware. On information and belief, certain of the Debtors are obligated under that certain Amended and Restated Credit Agreement, dated as of November 16, 2010 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement"), by and among TSA as borrower, Slap Shot, TSA Stores, and Gift Card as guarantors, Prepetition Term Loan Agent as successor Administrative Agent to BofA, and the lenders named therein (the "Prepetition Term Loan Lenders") whereby the Prepetition Term Loan Lenders extended to TSA a term loan in the original principal amount of approximately $300 million, subject to relative collateral priorities pursuant to an intercreditor agreement.

6. Yusen is a New York corporation that transported or coordinated the transportation of goods sold by O2Cool to TSA Stores.

7. OOCL is a New York corporation that transported goods sold by O2Cool to TSA Stores.

## JURISDICTION AND VENUE

8. On March 2, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each of the Debtors' bankruptcy cases is being jointly administered.

9. Since the Petition Date, Debtors have remained in possession of their assets as debtors-in-possession under §§ 1107 and 1008 of the Bankruptcy Code.

10. This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure seeking a declaratory judgment determining whether certain property constitutes property of the estate and the relative priority of liens therein, and the recovery of money or property.

{C0496197.1 }

3

11. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334(b) and 2201(a). The Court's consideration of this matter constitutes a core proceeding under 28 U.S.C. § 157(b) over which this Court has jurisdiction, and to which O2Cool consents, to enter a final order.

12. Venue is proper in this judicial district under 28 U.S.C. § 1409(a).

## BACKGROUND FACTS

**O2Cool's Sale of Goods to TSA Stores**

13. Prior to the Petition Date, O2Cool sold certain goods to TSA Stores as described in the invoices attached hereto as **Exhibit A** (the "Stopped Goods") in the total amount of $608,130.00 (the "Unpaid Balance") which remains unpaid. The Stopped Goods were sold pursuant to a TSA Stores, Inc. 2015 Import Vendor Deal Sheet Summary between O2Cool and TSA Stores, a copy of which is attached hereto as **Exhibit B**. Orders were confirmed by purchase orders that were submitted electronically by TSA Stores to O2Cool. Copies of the data underlying the electronic purchase orders are attached hereto as **Exhibit C**.

14. To transport the Stopped Goods from their origin in China to the Port of Long Beach, California and ultimately to TSA Stores' distribution center in Colorado, the Stopped Goods were placed for shipment with Yusen, the party with which TSA Stores had contracted for shipment of its orders. TSA Stores required that O2Cool utilize the services of Yusen for shipment of the Stopped Goods. O2Cool did not, at any relevant time, maintain a contractual relationship with Yusen.

15. On information and belief, Yusen, in turn, arranged for various carriers to transport the Stopped Goods. On information and belief, OOCL was one such carrier and did, in fact, transport a majority of the Stopped Goods.

**O2Cool's Issuance of Stoppage Notices**

16. Prior to the Petition Date, upon learning of TSA Stores' insolvency and intention to file for bankruptcy protection, O2Cool transmitted to Yusen (and copied TSA Stores) five separate notices of stoppage of delivery of goods in transit under § 2-705 of the Uniform Commercial Code (the "Stoppage Notices"). Copies of the Stoppage Notices are attached hereto as **Exhibit D**. The Stoppage Notices were transmitted in the manner indicated above the addressee block on each. In the Stoppage Notices, O2Cool demanded that Yusen immediately stop delivery of, and return the Stopped Goods to, O2Cool. Yusen acknowledged receipt of the Stoppage Notices.

17. Subsequently, upon being advised by Yusen that it is not the carrier of the Stopped Goods, but rather than it is the freight forwarder that arranges for the transportation of the Stopped Goods by various carriers, including OOCL, O2Cool transmitted the Stoppage Notices to OOCL. OOCL acknowledged receipt of the Stoppage Notices.

18. By virtue of having received the Stoppage Notices, Yusen and OOCL were on notice O2Cool's demand for stoppage of delivery and return of the Stopped Goods and of O2Cool's rights under § 2-705 of the Uniform Commercial Code.

19. At the time that each Stoppage Notice was transmitted, TSA Stores was insolvent within the meaning of § 2-705(1) of the Uniform Commercial Code.

20. At the time that each Stoppage Notice was transmitted:

   (a) the Stopped Goods that were the subject of each Stoppage Notice had not been received by TSA Stores and were not in TSA Stores' physical possession;

   (b) no bailee had acknowledged to TSA Stores that such bailee held the Stopped Goods for TSA Stores;

    (c)    no carrier by reshipment or as warehouseman had acknowledged to TSA Stores that such carrier by reshipment or as warehouseman held the Stopped Goods for TSA Stores; and

    (d)    no negotiable document of title covering the Stopped Goods had been negotiated to TSA Stores.

21.    As a result, O2Cool's Stoppage Notices were valid and effective.

22.    On information and belief, after O2Cool issued the Stoppage Notices, and notwithstanding O2Cool's rights under the Stoppage Notices and § 2-705 of the Uniform Commercial Code, TSA Stores advised Yusen and/or OOCL to disregard the Stoppage Notices and to continue delivery of the Stopped Goods to TSA.

23.    After it issued the Stoppage Notices, O2Cool engaged in dialogue with both Yusen and O2Cool in an effort to ascertain the location of the Stopped Goods. Upon information and belief, the all or a portion of the Stopped Goods may have been delivered to TSA Stores notwithstanding the Stoppage Notices and O2Cool's rights thereunder. O2Cool lacks knowledge regarding, and will seek to discover, the present location of the Stopped Goods. None of the Stopped Goods have been returned to O2Cool, and no proceeds from the sale of the Stopped Goods have been remitted to O2Cool.

24.    If any of the Stopped Goods were received by TSA Stores, some or all may have been sold to TSA Stores' customers. O2Cool lacks knowledge regarding, and will seek to discover, whether any of the Stopped Goods were sold by TSA Stores and the proceeds received from such sales.

25.    If any of the Stopped Goods were received by TSA Stores and sold to TSA Stores' customers, some or all of the proceeds of sale may have been remitted to one or more of the Lenders. O2Cool lacks knowledge regarding, and will seek to discover, whether the proceeds of sale of any of the Stopped Goods, if any, were remitted to any of the Lenders.

26.     As of the date hereof, O2Cool has been unable to ascertain whether all or any portion of the Stopped Goods were actually delivered to TSA Stores.

## COUNT I
### Determination of Property of the Estate

27.     O2Cool repeats and realleges the allegations contained in paragraphs 1 through 23 hereinabove as if fully set forth herein.

28.     This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

29.     A declaratory judgment would settle this controversy between the parties and would clarify the parties' current legal rights, duties and obligations.

30.     As a result of the Stoppage Notices, the goods subject thereto did not become property of TSA's bankruptcy estate.

31.     O2Cool is entitled to possession of the Stopped Goods, to the extent they are still in TSA Stores' possession, or to the proceeds of TSA Stores' (or its agent's or designee's) sale thereof.

**WHEREFORE,** Plaintiff O2Cool respectfully requests that this Court enter judgment in its favor and against Defendants:

(a)     declaring that the Stopped Goods are not property of TSA Stores' (or any other Debtors') bankruptcy estate;

(b)     ordering TSA Stores to provide an accounting of (i) Stopped Goods still in its possession and (ii) any proceeds of TSA Stores' sale of the Stopped Goods;

(c)     ordering TSA Stores and the Lenders to provide an accounting of any proceeds of TSA Stores' sale of the Stopped Goods remitted to one or more Lenders;

(d)     ordering any Defendant in possession of either Stopped Goods or proceeds of sale of the Stopped Goods immediately to return or remit the same to O2Cool; and

(e)      granting O2Cool such other and further relief as this Court deems fair and equitable.

## COUNT II
### (*in the alternative*)
### Determination of Lien Priority

32.      O2Cool repeats and realleges the allegations contained in paragraphs 1 through 23 hereinabove as if fully set forth herein.

33.      This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

34.      A declaratory judgment would settle this controversy between the parties and would clarify the parties' current legal rights, duties and obligations.

35.      As a result of the Stoppage Notices, O2Cool's rights in the Stopped Goods are superior to any rights in the Stopped Goods asserted by any or all of the Lenders as secured creditors.

**WHEREFORE,** Plaintiff O2Cool respectfully requests that this Court enter judgment in its favor and against Defendants:

(a)      declaring that O2Cool's rights in the Stopped Goods are superior to any rights in the Stopped Goods asserted by any or all of the Lenders as secured creditors;

(b)      ordering TSA Stores to provide an accounting of (i) Stopped Goods still in its possession and (ii) any proceeds of TSA Stores' sale of the Stopped Goods;

(c)      ordering TSA Stores and the Lenders to provide an accounting of any proceeds of TSA Stores' sale of the Stopped Goods remitted to one or more Lenders;

(d)      ordering any of the Lenders that received proceeds of sale of the Stopped Goods immediately to remit the same to O2Cool; and

(e)      granting O2Cool such other and further relief as this Court deems fair and equitable.

## COUNT III
## Conversion
## (Lenders, Yusen and OOCL)

36. O2Cool repeats and realleges the allegations contained in paragraphs 1 through 31 hereinabove as if fully set forth herein.

37. By virtue of the Stoppage Notices, O2Cool has a right in the Stopped Goods.

38. O2Cool has the right to immediate possession of the Stopped Goods, including any proceeds of sale of the Stopped Goods.

39. Yusen and OOCL have exercised or are exercising wrongful control over the Stopped Goods.

40. To the extent that any of the Lenders received proceeds from TSA Stores' sale of any of the Stopped Goods, such Lenders are exercising wrongful control over the Stopped Goods.

41. O2Cool demanded possession of the Stopped Goods.

**WHEREFORE,** Plaintiff O2Cool respectfully requests that this Court enter judgment in its favor and against Defendants:

(a) ordering TSA Stores to provide an accounting of (i) Stopped Goods still in its possession and (ii) any proceeds of TSA Stores' sale of the Stopped Goods;

(b) ordering TSA Stores and the Lenders to provide an accounting of any proceeds of TSA Stores' sale of the Stopped Goods remitted to one or more Lenders;

(c) ordering any of the Lenders, Yusen or OOCL in possession of either Stopped Goods or proceeds of sale of the Stopped Goods immediately to deliver or remit the same to O2Cool;

(d) ordering Yusen and OOCL to pay to O2Cool, as damages, the Unpaid Balance, less the value of any Stopped Goods or proceeds of Stopped Goods turned over to O2Cool; and

    (e)    granting O2Cool such other and further relief as this Court deems fair and equitable.

Dated: June 21, 2016                    CAMPBELL & LEVINE, LLC

                                          */s/ Ayesha C. Bennett*
                                          Ayesha C. Bennett (Bar No. 4994)
                                          222 Delaware Avenue, Suite 1620
                                          Wilmington, DE  19801
                                          Phone: (302) 426-1900
                                          Fax:    (302) 426-9947
                                          Email: abennett@camlev.com

                                                   -and-

                                          Jason M. Torf (admitted *pro hac vice*)
                                          HORWOOD MARCUS & BERK CHARTERED
                                          500 West Madison St.
                                          Suite 3700
                                          Chicago, IL  60661
                                          Phone:  (312) 606-3236
                                          Fax:     (312) 267-2202
                                          Email: jtorf@hmblaw.com

                                          *Counsel for O2Cool, LLC*