## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 16-10527 (MFW) |
| THE SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | ) ) ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| O2COOL, LLC, a Delaware Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) ) | |
| | ) | Adv. Pro. No. 16-51014 (MFW) |
| TSA STORES, INC.; BANK OF AMERICA, N.A.; WELLS FARGO BANK, NATIONAL ASSOCIATION; WILMINGTON SAVINGS FUND SOCIETY, FSB; YUSEN LOGISTICS (AMERICAS) INC.; and OOCL (USA), INC., | ) ) ) ) ) | |
| | ) | **Re: D.I. 1, 52** |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## OOCL (USA), INC.'S F.R.C.P. 12(C) MOTION FOR
## JUDGMENT ON THE PLEADINGS

Richard G. Placey (DE ID No. 4206)
Montgomery, McCracken, Walker & Rhoads, LLP
1105 North Market St., Suite 1500
Wilmington, DE 19801-1201
Ph: (302) 504-7880
Fax: (302) 504-7820

Alfred J. Kuffler (*pro hac vice*)
Montgomery, McCracken, Walker & Rhoads, LLP
123 S. Broad Street, 24th Floor
Philadelphia, PA 19109-1029
Ph: (215) 772-7454
Fax: (215) 731-3842

*Attorneys for Defendant OOCL (USA), Inc.*
Date: February 21, 2017

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110. The Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING.................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................... 2

STATEMENT OF THE FACTS ....................................................................................... 3

ARGUMENT ............................................................................................................. 5

I.     STANDARDS APPLICABLE TO A F.R.C.P. 12(c) MOTION ..................................... 5

     A.     Rule 12(c) Motions Are Subject To Same Standard That Applies To A
           Rule 12(b)(6) Motion To Dismiss ........................................................... 5

     B.     While Rule 12(b)(6) Motions Test the "factual plausibility" of the
           Complaint, Movant Can Rely Not Only on the Factual Allegations in the
           Complaint, but Also on Documents Attached to the Complaint or
           Expressly Relied Upon by the Plaintiff, and Public Records ............................. 6

          (1)     The complaint must raise a "factually plausible" claim, i.e., one
                that raises a "reasonable expectation" that discovery will reveal
                evidence of the elements necessary to prove the claim ........................... 6

          (2)     The court may consider not only allegations in the complaint, but
                also documents attached to the complaint and those integral to the
                complaint, or expressly relied upon, but not attached, and public
                records................................................................................. 7

II.    WITH RESPECT TO THE UNIFORM COMMERCIAL CODE, THE
     COMPLAINT FAILS TO ALLEGE A FACTUALLY PLAUSIBLE CLAIM ................ 9

III.   THE COMPLAINT ESTABLISHES THAT PLAINTIFF WAS ON NOTICE
     THAT THE BILLS OF LADING WERE NON-NEGOTIABLE AND,
     THEREFORE, UNDER SECTION § 2-705(3)(d) OF THE U.C.C., PLAINTIFF
     WHO IS NOT THE CONSIGNOR CANNOT PLEAD A CLAIM FOR WHICH
     RELIEF CAN BE GRANTED ...................................................................... 11

     A.     Documents Attached to the Complaint Prove that O2Cool Had Notice
           That the Bills of Lading were Non-Negotiable.................................... 11

     B.     The Bills are Non Negotiable ............................................................ 12

     C.     Because the Bills Are Non-Negotiable, Only the "Consignor" Could Give
           a Stoppage Notice Binding On OOCL, but O2Cool Alleges It and Not the
           Consignor Gave the Notice ............................................................... 13

CONCLUSION........................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amethyst Int'l, Inc. v. Duchess*,
No. 13–04287, 2014 WL 683670 (D.N.J. Feb. 20, 2014) ................................................5, 6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................6

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ........................................................................................8, 11

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ..............................................................................................7

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006) ..........................................................................................7, 11

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ......................................................................................8, 9, 11

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ............................................................................................6, 7

*Quanzhou Joerga Fashion Co., Inc. v. Brooks Fitch Apparel Group, LLC*,
No. 10 Civ. 9078, 2012 WL 4767180 (S.D.N.Y. Sept. 28, 2012) ...........................................12

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) .........................................................................................7, 8, 11

*Spruill v. Gillis*,
372 F.3d 218 (3d Cir. 2004) ..............................................................................................5

*Thypin Steel, Co. v. Certain Bills of Ladings*,
No. 96 Civ. 2166, 2002 WL 31465791 (S.D.N.Y. Nov. 4, 2002), *aff'd on these grounds*, 82 Fed. Appx. (2d Cir. 2003) .................................................................................12

*Turbe v. Gov't of Virgin Islands*,
938 F.2d 427 (3d Cir. 1991) ..............................................................................................5

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Statutes**

6 Del. C. § 2-705(3)(d) ..........................................................................................13

Delaware U.C.C. (6 Del. C.)......................................................................................2

U.C.C. § 2-705................................................................................................1, 2, 4, 9

U.C.C. § 2-705(1) ...........................................................................................9, 10

U.C.C. § 2-705(3)(d).........................................................................................10, 13

U.C.C. §7-104(1)(a)...............................................................................................12

UCC § 2-705(3) ..........................................................................................2, 3, 10, 11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................5, 6

Federal Rule of Civil Procedure 12(c).........................................................1, 5

Federal Rule of Bankruptcy Procedure 7012...........................................1, 5

Defendant OOCL (USA), Inc. ("OOCL") moves under Federal Rule of Civil Procedure 12(c), made applicable herein by Fed.R. Bankr. P. 7012,  for judgment on the pleadings with respect to those Counts (I and III) of Plaintiff O2Cool, LLC's ("Plaintiff" or "O2Cool") Complaint (D.I. 1) against OOCL.  In support of its Motion, OOCL respectfully states as follows:

## NATURE AND STAGE OF THE PROCEEDING

1.      On June 21, 2016, O2Cool filed the Complaint commencing the above-captioned adversary proceeding.  Plaintiff alleges that it sold goods (the "Disputed Goods" or "Goods") to debtor TSA Stores, Inc. ("TSA Stores") prior to the Petition Date.  The Disputed Goods were placed with defendant Yusen Logistics (Americas) Inc. ("Yusen") for shipment from China to TSA Store's distribution center in Colorado.  Complaint ¶ 14.  Yusen, in turn, arranged for various carriers to transport the Disputed Goods.  Plaintiff alleges that OOCL was one such carrier and did, in fact, transport a majority of the Disputed Goods.  *Id.* ¶ 15.  Plaintiff alleges that prior to the Petition Date, it transmitted Uniform Commercial Code ("U.C.C.") "notices of stoppage of delivery of goods in transit under § 2-705" of the U.C.C. to defendants Yusen and OOCL (the "U.C.C. Stoppage Notices").  *Id.* ¶¶ 16–17.  Despite the U.C.C. Stoppage Notices, Plaintiff alleges that all or a portion of the Goods were delivered to TSA Stores and may have been sold.  *Id.* ¶¶ 23–25.

2.      The Complaint contains three Counts:  Count I is for Determination of Property of the Estate, Count II is for Determination of Lien Priority, and Count III is for Conversion.  Only Count III is pled against OOCL, Count II is on its face not against OOCL and, to the extent that Count I impacts OOCL at all , the legal basis as against OOCL is the same as the basis for Count III -- that the U.C.C. Stoppage Notices were effective under U.C.C. § 2-705.  *Id.* ¶¶ 27–41.  The

Plaintiff demands, among other things, the return of the Goods or the return of the proceeds from the sale of the Goods.  *Id.*

3.      The Court should dismiss the counts of the Complaint (I[2] and III) against OOCL, all of which rely on § 2-705 of the Uniform Commercial Code[3] and the U.C.C. Stoppage Notices, and grant OOCL's motion for judgment on the pleadings.  As set forth herein (1) the Complaint fails to allege "factually plausible" claims based upon the U.C.C. Stoppage Notices, and (2) Plaintiff will be unable to allege any factually plausible claims under these notices.  Count II of the Complaint is not directed against OOCL, thus OOCL does not need to address that count in order to be dismissed.

## SUMMARY OF THE ARGUMENT

4.      O2Cool's complaint is defective and fails to state a claim as a matter of law because it does not state whether (1) the Disputed Goods were carried under any bills of lading, and (b) if bills of lading were employed, whether they were negotiable or non-negotiable.  These allegations are necessary to Plaintiff's Complaint because without them it is impossible to determine the bailee's obligations under U.C.C. § 2-705(3), codified at 6 Del. C. § 2-705.

5.      In addition, O2Cool's complaint is defective and should be dismissed with prejudice as to OOCL because O2Cool cannot and will not be able to allege any factually plausible claims.  O2Cool alleges that it, as seller, sent the U.C.C. Stoppage Notices to OOCL. O2Cool does not and cannot allege that it was the "consignor."  Under § 2-705 – the U.C.C. section upon which the Stoppage Notices (Complaint, Exhibit D [D.I. 1-4]) rely – only the

---

[2]      As noted above, it is doubtful that Count I seeks relief against OOCL, but in any event as set forth in this memorandum of law, there is no basis for relief against OOCL based on the U.C.C. Stoppage Notices.

[3]      Plaintiff seeks relief based on the U.C.C., and this memorandum demonstrates that the U.C.C. does not entitle Plaintiff to that relief.  OOCL does not concede the applicability of the U.C.C., but only accepts that it was pled in the Complaint and therefore is what must be addressed on a motion based on the pleadings.  Citations to the Delaware U.C.C. (6 Del. C.) are for convenience.

consignor can issue a binding stoppage notice to a carrier who has issued a non-negotiable bill of lading. Since O2Cool was not the consignor and the bills of lading were non-negotiable, O2Cool's U.C.C. Stoppage Notices were ineffective as to OOCL.

6.     Finally, Plaintiff fails to allege under § 2-705(3) that OOCL received the U.C.C. Stoppage Notices within a time frame sufficiently reasonable to allow compliance.

## STATEMENT OF THE FACTS

7.     According to the Complaint, O2Cool sold to TSA the Disputed Goods that are the subject of this adversary proceeding from January to February 2016. Complaint ¶13, Exhs. A, B.

8.     OOCL is alleged to have transported the Disputed Goods from China to various destinations in the United States. *Id.* ¶17.

9.     Yusen is likewise alleged to have "transported or coordinated the transportation" of the Disputed Goods. *Id.* ¶¶ 6, 14, 15.

10.     The Complaint also alleges that Yusen arranged for shipment of certain of the Disputed Goods with OOCL, and the Stopped Goods were placed for shipment with Yusen, the party with which TSA Stores had contracted for shipment of orders.[4] *Id.* ¶¶ 14, 15. O2Cool did not at any relevant time, maintain a contractual relationship with Yusen.

11.     After the Goods were placed with Yusen for shipment, O2Cool purportedly learned of TSA's insolvency. *Id.* ¶ 16.

12.     In the interim, Yusen issued "Forwarder's Cargo Receipts" for the Disputed Goods shipped with OOCL. *Id.* Exh. D [D.I. 1-4], pp., 13, 20-1, 27, 31, 36, 38, 42. The receipts

---

[4]     Defendant OOCL (USA), Inc. in fact is agent for Orient Overseas Container Line Limited. *See* Exh. 2, p. 6. ¶¶ 1, 25 (reverse side of bill of lading), and Exh. 3, OOCL form Bill of Lading Terms and Conditions (legible version). attached to this memorandum. Because Exh. D attached to the Complaint refers to the bills of lading, it is appropriate on this motion for OOCL to utilize the bills.

     For purposes of this pleadings motion only, however, OOCL (USA), Inc. accepts the allegation that it transported the goods. OOCL (USA), Inc. reserves all defenses and its right to assert its agency status.

contain references in the lower left hand corner to the bills of lading.[5]  Copies of the relevant

Forwarder's Cargo Receipts extracted from Exhibit D to the Complaint for convenience, are

attached as Exhibit 1.

13.    Seven bills of lading were issue on behalf of OOCL's principal.  *See* Exh. 2

attached for the cargo reflected by the receipts that OOCL carried.[6]  The terms and conditions for

OOCL's form bill of lading are on the Federal Maritime Commission's ("FMC") and the

carrier's websites.  *See* Exh. 3, OOCL's form Bill of Lading Terms and Conditions,

www.oocl.com (last accessed Feb. 13, 2017).

14.    The bills state that the shipper was "Shenzhen Yusen Freight Service Company

Limited – OCM."  *Id.*

15.    The bills show the "consignee" as TSA Stores, Inc.  *Id.*

16.    The "consignee" is not "To order" or "To order of . . ."  *Id.*

17.    O2Cool alleges that it sent the U.C.C. Stoppage Notices attached as Exhibit D to

the Complaint [D.I. 1-4] to Yusen and OOCL.  Complaint ¶¶ 16, 17.  The Notices are titled "Re:

U.C.C. § 2-705 Notice of Stoppage of Goods in Transit to TSA Stores, Inc."  *Id.*  No Stoppage

Notices were sent by the consignee or shipper, "Shenzhen Yusen Freight Service Company

Limited – OCM."

---

[5]    The Receipts at pp. 13, 21, 36, and 42 of Exhibit D to the Complaint [D.I. 1-4] seem to have the notation cut off as a result of copying for the Complaint.  The receipt at p. 46 indicates it is an "FCR Draft" in the box where the "Verification Copies" attached for the other receipts refer to the bills of lading.  Since the "Verification Copy" of the other receipts referred to the bills, there is no basis to assume that the Verification Copy of the receipt at p. 46 is any different.

[6]    OOCL did not carry the Disputed Goods reflected on the receipts attached at pp. 7 and 42 of Exh. D to the Complaint [D.I. 1-4].  These goods, as shown on the receipts, were carried by the M/V CMA CGM Columbia and CSCL America, respectively.  OOCL had no interaction with these two vessels and Plaintiff has pled no facts in its Complaint to suggest otherwise.  Indeed the Complaint concedes that some goods were carried by others.  *Complaint, ¶*15. ("OOCL  was one such carrier and. . . transport[ed] a majority of the Stopped Goods.")

18.    Plaintiff alleges the Disputed Goods "may have been delivered to TSA Stores."

*Id.* ¶23.

19.    TSA admits in its Answer that it received all but $7,740 of the Disputed Goods.

D.I. 20, TSA's Answer ¶7.

## ARGUMENT

## I.    STANDARDS APPLICABLE TO A F.R.C.P. 12(C) MOTION

### A.    Rule 12(c) Motions Are Subject To Same Standard That Applies To A Rule 12(b)(6) Motion To Dismiss

20.    Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(c) permits parties to challenge the sufficiency of the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial." Fed. R. Civ. P. 12(c), made applicable by Fed.R. Bankr. P. 7012.   The standard that a court applies on a motion for judgment on the pleadings pursuant to Rule 12(c) is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6).[7] *See Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991); *see also Spruill v. Gillis,* 372 F.3d 218, 223 n.2 (3d Cir. 2004); *Amethyst Int'l, Inc. v. Duchess,* No. 13–04287, 2014 WL 683670, at *6-7 (D.N.J. Feb. 20, 2014).

---

[7]    Since this is a motion for failure to state a claim pursuant to Rule 12(c), and is governed by Rule 12(b)(6), the facts are taken from the Complaint, as that rule requires.  However, numerous of the purported facts averred in the Complaint are simply wrong, and acceptance of such averments for purposes of a motion to dismiss is not an admission as to their truth.

**B.**  **While Rule 12(b)(6) Motions Test the "factual plausibility" of the Complaint, Movant Can Rely Not Only on the Factual Allegations in the Complaint, but Also on Documents Attached to the Complaint or Expressly Relied Upon by the Plaintiff, and Public Records**

    **(1)**  **The complaint must raise a "factually plausible" claim, *i.e.*, one that raises a "reasonable expectation" that discovery will reveal evidence of the elements necessary to prove the claim.**

21.    In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  The factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 554.  The Third Circuit has summed up the Supreme Court's *Twombly* formulation of the pleading standard as: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. [] This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

22.    The Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), while affirming that the *Twombly* standard applies to all motions to dismiss, further clarified the standard for judgment on the pleadings: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678; *Amethyst*, 2014 WL 683670, at *6-7.

23.    "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*  In short, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009); *see also Amethyst*, 2014 WL 683670, at *6-7.

24.     When applying these principles, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233  (internal citations and quotations omitted).

25.     As OOCL demonstrates below, O2Cool has not and cannot meet this standard with respect to the claims against OOCL, which are based on the U.C.C. Stoppage Notices.

> **(2)     The court may consider not only allegations in the complaint, but also documents attached to the complaint and those integral to the complaint, or expressly relied upon, but not attached, and public records.**

26.     In resolving a motion to dismiss, "a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) (*quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). This rule has been applied to public documents such as SEC filings and other similar public records. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing, City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) and *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)).

27.     Pursuant to the Shipping Act, 46 U.S.C. § 40101, *et seq.*, the OOCL tariff, and therefore the terms of the bills of lading or way bills which attached to this motion as Exh. 3, are published online with the Federal Maritime Commission[8] and the carrier,[9] and the public has

---

[8]       *See* Federal Maritime Commission website, Vessel Operating Common Carriers, legal name Orient Overseas Container Line Limited, trade name OOCL, referring to www.oocl.com, at https://www2.fmc.gov/FMC1Users/scripts/ExtReports.asp?tariffClass=vocc (last accessed Jan. 11, 2017).

unqualified access to them.  *See Pension Benefit*, 998 F.2d at 1197 (noting public had unqualified access to public records that included criminal case dispositions, letter decisions of government agencies, and published reports of administrative bodies).  The tariff and bills of lading here are just such public documents to which the court can refer in deciding this motion.  Relevant portions of the tariff are attached here as Exh. 4.

### (a)   Judicial Notice of Undisputedly Authentic Documents Relied Upon in Plaintiff's Complaint.

28.      A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit*, 998 F.2d at 1196.

29.      A plaintiff bases his or her claims on a document where the document is "*integral to or explicitly relied* upon in the complaint . . . ."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).  "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  *Schmidt*, 770 F.3d at 249; *In re Burlington Coat Factory*, 114 F.3d at 1426.  "[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint."  *Schmidt*, 770 F.3d at 249; *Pension Benefit*, 998 F.2d at 1196 ("[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

---

9        *See* OOCL's form Bill of Lading Terms and Conditions, http://www.oocl.com/eng/resourcecenter/blterms/Pages/default.aspx (last accessed Jan. 11, 2017).

30.     Plaintiff has explicitly relied on the Forwarder's Cargo Receipts attached as part of Exh. D to the Complaint.  (Complaint ¶¶ 16, 17, Exh. D, pp. 7, 13, 20-1, 27, 31, 36, 38).  The Forwarder's Cargo Receipts expressly refer in the lower left hand corner to the bills of lading. *Id.*  OOCL can rely on the bills in this motion for this reason alone.

31.     In addition, the bills of lading under which OOCL carried the Disputed Goods are integral to O2Cool's Complaint.  OOCL transported the Goods pursuant to the bills of lading, and the Goods would not have been transported without them (and therefore there could be no stoppage of goods and no claim against OOCL without the bills).  *See* Complaint ¶ 17.  Not allowing OOCL to rely on the bills in the motion would allow a "plaintiff with a legally deficient claim [to potentially] survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Benefit*, 998 F.2d at 1196.  As in *Pension Benefit*, so too here, Plaintiff's Complaint cannot survive a motion to dismiss simply by failing to attach the dispositive document on which it relies.

32.     Finally, there is no question regarding the bills' authenticity, so OOCL is entitled to rely upon the bills in this motion.

## II.     **WITH RESPECT TO THE UNIFORM COMMERCIAL CODE, THE COMPLAINT FAILS TO ALLEGE A FACTUALLY PLAUSIBLE CLAIM**

33.     As more fully set in paragraphs 18 and 19 of the Complaint, Plaintiff basis its right to stop the Goods, and thus its claim for relief against OOCL, on § 2-705(1) of the U.C.C. *See* 6 Del. C. § 2-705.  Indeed, the U.C.C. Stoppage Notices, which are the foundation of the claims against OOCL, are expressly titled "U.C.C. § 2-705 Notice of Stoppage…"  Complaint Exhibit D [D.I. 1-4].

34.     Section 2-705(1) governing the right to stop delivery provides, in relevant part,

"[t]he seller may stop delivery of goods in the possession of a carrier or other bailee when he

discovers the buyer to be insolvent." *Id.* Plaintiff O2Cool alleges that it is the seller in this case.

35.     However, O2Cool conveniently ignores the Code in § 2-705(3), which provides

when and how a stop delivery notice must be sent and obeyed.  It provides:

> (3)(a) To stop delivery the seller must so notify as to enable the bailee by
> reasonable diligence to prevent delivery of the goods.
>
> (b) After such notification the bailee must hold and deliver the goods according to
> the directions of the seller but the seller is liable to the bailee for any ensuing
> charges or damages.
>
> (c) If a negotiable document of title has been issued for goods the bailee is not
> obliged to obey a notification to stop until surrender of the document.
>
> **(d) A carrier who has issued a non-negotiable bill of lading is not obliged to**
> **obey a notification to stop received from a person other than the consignor.**
>
> *Id.* (emphasis added)

36.     Preliminarily, O2Cool's complaint is defective first because it does not state

whether (1) the Disputed Goods were carried under any bills of lading, and (2) if bills of lading

were employed, whether they were negotiable or non-negotiable.  These allegations are

necessary to Plaintiff's Complaint because without them it is impossible to determine whether

there is any plausible basis for the bailee's alleged obligations under § 2-705(3).

37.     Secondly, if bills were used and they were non-negotiable, Plaintiff alleges that **it**

(the seller) sent the U.C.C. Stoppage Notices to OOCL, Complaint at ¶17.  But, most

importantly, Plaintiff does **not** allege that it was the consignor under any bills of lading and thus

the party able to compel the carrier to honor its stoppage notice under § 2-705(3)(d).  This

argument is discussed in more detail in Section III below.

38.     Absent such allegations, Plaintiff has failed to state a factually plausible claim and, as will be shown below in Section III, Plaintiff cannot state a factually plausible claim.

39.     Finally, Plaintiff fails to allege under § 2-705(3) that OOCL received the U.C.C. Stoppage Notices within a time frame sufficiently reasonable to allow compliance.

40.     For the foregoing reasons, the O2Cool's Complaint is deficient under controlling law and should be dismissed.

III.    **THE COMPLAINT ESTABLISHES THAT PLAINTIFF WAS ON NOTICE THAT THE BILLS OF LADING WERE NON-NEGOTIABLE AND, THEREFORE, UNDER SECTION § 2-705(3)(D) OF THE U.C.C., PLAINTIFF WHO IS NOT THE CONSIGNOR CANNOT PLEAD A CLAIM FOR WHICH RELIEF CAN BE GRANTED**

A.      **Documents Attached to the Complaint Prove that O2Cool Had Notice That the Bills of Lading were Non-Negotiable**

41.     The Forwarder's Cargo Receipts, attached as a portion of Exh. D to the Complaint (pp. 20, 27, 31, 38 of the exhibit at D.I. 1-4) and also attached as Exh. 1 hereto for convenience, in the lower left hand corner of the document contain references to the bills of lading.

42.     Because O2 Cool has these receipts with the foregoing notation, Plaintiff is and has been on notice that bills of lading exist, and most importantly, that bills are non-negotiable.

43.     Because Exh. D to the Complaint refers to the bills and integrates them, and there is no question of authenticity, this Court may consider them and the bills may be utilized in this motion. *Pension Benefit*, 998 F.2d at 1196; *Schmidt*, 770 F.3d at 249; *In re Burlington Coat Factory*, 114 F.3d at 1426. Moreover, as the bills are published online with the Federal Maritime Commission and on the carrier's website, they are public records and the court can take notice of them when deciding this motion. *Schmidt*, 770 F.3d at 249; *Pension Benefit*, 998 F.2d at 1197; *Jean Alexander*, 458 F.3d at 256 n.5. Because O2 Cool has the forwarder's receipts with the

foregoing notation, Plaintiff knows that bills of lading exist, and most importantly, that bills are non-negotiable.

44.     Copies of the relevant bills (labeled "Sea Way Bill") are attached hereto as Exh. 2.

**B.     <u>The Bills are Non Negotiable</u>**

45.     Examination of the face of the bills demonstrates that they are not negotiable:

(a) The bills at the top of the page state, "COPY NON NEGOTIABLE."

(b) At the top left hand side of the bill is a box labeled "Consignee." TSA Stores, Inc. appears as the consignee.

46.     As a matter of law, unless the consignee is "To order," the bills are non-negotiable. 6 Del. C. § 7-104(1)(a); *Thypin Steel, Co. v. Certain Bills of Ladings,* No. 96 Civ. 2166, 2002 WL 31465791, at *4 (S.D.N.Y. Nov. 4, 2002), *aff'd on these grounds*, 82 Fed. Appx. (2d Cir. 2003); *Quanzhou Joerga Fashion Co., Inc. v. Brooks Fitch Apparel Group, LLC,* No. 10 Civ. 9078, 2012 WL 4767180, at *7 (S.D.N.Y. Sept. 28, 2012).

47.     Moreover, OOCL's public tariff, (Exh. 4) contains the following provision, effective by its own statement, on 29 November 2012 which provides:

> Bills of Lading – Documentation
> .         .         .
> (f)     Except as noted below, all references in this tariff to 'Bills of Lading' shall equally apply to carriers' Sea Way bills. For purposes of this tariff, a consignee with a specific name and address (and not considered as 'to order'), which is non-negotiable and cannot transfer title of ownership. Cargo shipped under a Sea Way bill can only be delivered to the consignee named in the document, and in view of the fact that the Sea Way bill is non-negotiable, it is not necessary to issue more than one document . . .

48.     The tariff thus confirms (1) that the Sea Way bills OOCL issued for the Disputed Goods are non-negotiable and (2) that delivery to TSA was proper.

-12-

**C.** **Because the Bills Are Non-Negotiable, Only the "Consignor" Could Give a Stoppage Notice Binding On OOCL, but O2Cool Alleges It and Not the Consignor Gave the Notice**

49.     As already discussed under § 2-705(3)(d), only the "consignor" can give a binding stoppage notice.  6 Del. C. § 2-705(3)(d).  As explained in Official Comment 2, under § 2-705(3)(d)  "the carrier is under no duty to recognize the stop order of a person who is a stranger to the carrier's contract."  *Id.*  This makes perfect sense because a carrier should not be under any obligation to recognize a stop order from an entity that with which it has no relationship.

50.     Because O2Cool alleges that it, as seller, sent the notices to OOCL (Complaint at ¶17), O2Cool does not and cannot allege that it was the "consignor" as a matter of law and the Stoppage Notices were ineffective as to OOCL.

51.     In these circumstances, O2Cool will not be able to plead a facially plausible case and the Complaint should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, OOCL respectfully requests that the Court (i) grant the Motion for judgment on the pleadings and dismiss the Complaint against OOCL with prejudice; (ii) enter an order substantially in the form attached as Exhibit A to the Motion; and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:    February 21, 2017

/s/  *R.G. Placey*
Richard G. Placey (DE ID No. 4206)
Montgomery, McCracken, Walker & Rhoads, LLP
1105 North Market St., Suite 1500
Wilmington, DE  19801-1201
Ph. (302) 504-7880/Fax (302) 504-7820

/s/ *Alfred J. Kuffler*
Alfred J. Kuffler (*pro hac vice*)
Montgomery, McCracken, Walker & Rhoads, LLP
123 S. Broad Street, 24th Floor
Philadelphia, PA 19109-1029
Ph:  (215) 772-7454/Fax:  (215) 731-3842

*Attorneys for Defendant*
*OOCL (USA), Inc.*

-14-

4247667v2