**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TSAWD HOLDINGS, INC., et al.,[1]<br><br>Debtors. | ) Chapter 11<br><br>)<br><br>) Case No. 16-10527 (MFW)<br>) Jointly Administered |
| O2COOL, LLC<br><br>Plaintiff,<br><br>v.<br><br>TSA STORES, INC.; BANK OF AMERICA, N.A.; WELLS FARGO BANK, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB; YUSEN LOGISTICS (AMERICAS), INC.; and OOCL (USA), INC.,<br><br>Defendants. | )<br><br>)<br><br>) Adv. No. 16-51014 (MFW)<br><br>) |

**MEMORANDUM OPINION**[2]

Before the Court are the Motions of Wilmington Savings Fund Society, FSB ("WSFS"), Bank of America, N.A., and Wells Fargo Bank, N.A. (collectively, "WSFS and the Term Loan Lenders") to Dismiss the Adversary Complaint filed by O2Cool, LLC ("O2Cool"). The complaint seeks a declaration that certain stopped goods do

---

[1] The Debtors were formerly known as Sports Authority Holdings, Inc., et al.

[2] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Accordingly, the facts recited are those averred in the complaint, which must be presumed as true for purposes of the Motions to Dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

not constitute property of the Debtors' estates and that O2Cool's rights in the stopped goods and sale proceeds thereof are superior to those of WSFS and the Term Loan Lenders. WSFS and the Term Loan Lenders seek to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Motions to Dismiss will be denied.

## I. BACKGROUND

O2Cool is a designer, manufacturer, and distributor of consumer goods, specializing in pool and beach products. The Debtors marketed and sold certain of O2Cool's products from their retail stores located across the United States and Puerto Rico. WSFS and the Term Loan Lenders are prepetition secured creditors of the Debtors pursuant to an asset-based revolving credit facility.

Between January and February 2016, the Debtors purchased certain goods for resale from O2Cool (the "Disputed Goods") at the total cost of $608,130 which remains unpaid. In order to transport the Disputed Goods from their origin in China to the Debtors' distribution center in Colorado, O2Cool placed the Disputed Goods for shipment with Yusen Logistics (Americas), Inc. ("Yusen"), the party with which the Debtors contracted for the

shipment of its orders.  Yusen, in turn, arranged for various carriers, including OOCL (USA), Inc. ("OOCL"), to transport the Disputed Goods.

Prior to the petition date, O2Cool learned of the Debtors' insolvency.  Between February 12 and 26, 2016, O2Cool sent Yusen five separate notices to stop delivery of the Disputed Goods (collectively, the "Stoppage Notices") pursuant to section 2-705 of the Uniform Commercial Code (the "UCC").  Yusen acknowledged receipt of the Stoppage Notices but advised O2Cool that Yusen functioned as the freight forwarder and that OOCL was in fact the carrier.  O2Cool then transmitted the Stoppage Notices to OOCL, which acknowledged receipt of the same.

The Disputed Goods were not returned to O2Cool.[3]  O2Cool alleges that the Debtors advised Yusen and/or OOCL to disregard the Stoppage Notices and deliver the Disputed Goods to the Debtors.

On March 2, 2016, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On May 3, 2016, the Court entered a final order authorizing the Debtors to obtain postpetition secured financing and authorizing the use of cash collateral (the "Final DIP Order").  (D.I. 1699.)  The Final DIP

---

[3]  The Debtors' Answer avers that the Debtors received the Disputed Goods, sold them to retail customers, and remitted the sale proceeds to WSFS and/or the Term Loan Lenders.  (Adv. D.I. 20.)

Order, inter alia, defined the period during which parties in interest could bring an action against any of the Prepetition Agents or the Prepetition Secured Lenders to challenge their liens or claims (a "Challenge Proceeding"). Id. at ¶ 25. A Challenge Proceeding was defined to include:

> (a) an objection to or challenge of . . . (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Agents and Prepetition Secured Lenders in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, or
>
> (b) a suit against the Prepetition Agents or Prepetition Secured Lenders in connection with or related to the Prepetition Secured Debt or the Prepetition Liens, or the actions or inactions of the Prepetition Agents or Prepetition Secured Lenders arising out of or related to the Prepetition Secured Debt or Prepetition Liens;

Id. (emphasis added). The Final DIP Order required a party in interest other than an official Committee to commence a Challenge Proceeding within seventy-five days of the entry of the Interim Order, or by May 18, 2016 (the "Challenge Proceeding Deadline").

On June 21, 2016, O2Cool commenced the instant adversary proceeding seeking a declaration that the Disputed Goods do not constitute property of the Debtors' estates and that O2Cool's rights in the Disputed Goods and sale proceeds thereof are superior to the rights of the Debtors, WSFS, and the Term Loan Lenders. (Adv. D.I. 1.) O2Cool seeks an accounting, the recovery of money or property, and/or damages. Id.

On September 8, 2016, WSFS moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay the claims asserted against WSFS, pending adjudication of the claims against the Debtors, Yusen, and OOCL. (Adv. D.I. 22, 23.)

The Term Loan Lenders filed joinders in WSFS's Motion to Dismiss and additionally moved to dismiss O2Cool's claims because they allege they are oversecured and therefore received no benefit from the sale of the Disputed Goods. (Adv. D.I. 24, 26.)

## II. DISCUSSION

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction

WSFS and the Term Loan Lenders contend that the Court lacks subject matter jurisdiction over this action. The Court has authority to determine whether it has subject matter jurisdiction over an adversary proceeding. See, e.g., Liquidating Tr. of the MPC Liquidating Trust v. Granite Fin. Solutions (In re MPC Computers, LLC), 465 B.R. 384, 386 (Bankr. D. Del. 2012) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

#### 1. Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction that challenges the sufficiency of pleading in a complaint is known as a facial attack. See MPC Computers, 465 B.R. at 387-88. See also Team Angry Filmworks, Inc. v. Geer, 171 F. Supp. 3d 437, 440-41 (W.D. Pa. 2016) ("If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or otherwise presenting competing facts, the Rule 12(b)(1) motion is, by definition, a facial attack." (internal quotation marks and citation omitted)). In reviewing a facial attack, the Court must "accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." MPC Computers, 465 B.R. at 387-88 (citations omitted).

The party invoking the federal court's subject matter jurisdiction bears the burden of establishing its existence by a preponderance of the evidence. See, e.g., Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009); Edmunds Holding Co. v. Autobytel Inc., 598 F. Supp. 2d 606, 609 (D. Del. 2009). Thus, O2Cool bears the burden of establishing that the Court has the requisite jurisdiction to hear its declaratory judgment action, but the factual allegations in its complaint must be accepted as true.

2. The Declaratory Judgment Act

WSFS and the Term Loan Lenders move to dismiss O2Cool's declaratory judgment action for lack of subject matter jurisdiction because they contend that the facts alleged fail to demonstrate that the dispute is ripe for adjudication. See MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007).

Under the Declaratory Judgment Act (the "Act"), the Court has the power to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201(a). Absent an actual controversy, however, the Court has no authority to decide the case. Amgen, Inc. v. Ariad Pharm., Inc., 577 F. Supp. 2d 702, 709 (D. Del. 2008).

An "actual controversy" under the Act is the same as a case or controversy that is justiciable under Article III of the Constitution and therefore, must be ripe for judicial intervention. See MedImmune, 549 U.S. at 126. "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Peachlum v. City of York, Pa., 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted).

To be considered ripe,

> [t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). Accordingly, in determining ripeness under the Act, the Court must consider the adversity of the interests of the parties, the conclusiveness of any judgment in defining and clarifying the parties' legal rights or relations, and the practical help or utility of issuing a declaratory judgment. Id. See also Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 190-91 (3d Cir. 2009).

WSFS and the Term Loan Lenders rely on Step-Saver in arguing that a declaration with respect to them would be inconclusive because it is contingent on (1) the alleged wrongdoing of the carrier in failing to return the Disputed Goods in accordance with the Stoppage Notices and (2) the alleged wrongdoing of the Debtors (a) in advising Yusen and/or OOCL to disregard the Stoppage Notices and (b) in ultimately selling the Disputed Goods without remitting the sale proceeds to O2Cool. Step-Saver, 912

F.2d 643. Accordingly, WSFS and the Term Loan Lenders contend that the Court should dismiss, or in the alternative, stay the adversary proceeding as to them until the claims against Yusen, OOCL, and the Debtors have been resolved.

O2Cool, however, asserts that the dispute is ripe for declaratory judgment because O2Cool's rights as against WSFS and the Term Loan Lenders are immediately and directly impacted by the claims in the complaint, namely, whether the Stoppage Notices prevented the Disputed Goods from becoming property of the Debtors' estates such that O2Cool's rights in the Disputed Goods are superior to the rights of WSFS and the Term Loan Lenders.

The Court agrees with O2Cool and concludes that the dispute is ripe for adjudication. This is not a case of a hypothetical dispute where certain contingencies have not yet occurred or the potential harm is too speculative to pose an immediate threat. Rather, O2Cool alleges that certain past events have already resulted in a concrete financial injury to it – at minimum, the disposal of the Disputed Goods and transfer of the proceeds to WSFS and the Term Loan Lenders.

The Court finds Step-Saver distinguishable. In Step-Saver, the plaintiff had been sued for allegedly defective goods it had purchased from the manufacturer, modified, and then sold to consumers (the "Consumer Actions"). Step-Saver, 912 F.2d at 645. In a separate action, the plaintiff sued the manufacturer of the

goods, seeking a declaratory judgment that the manufacturer was liable to it if the Consumer Actions established a manufacturing defect in the goods. Id. The Step-Saver court held that the declaratory judgment action against the manufacturer was not ripe because it was contingent on a ruling in the Consumer Actions that there was a manufacturing defect. Id. at 648.

In this case, in contrast, all parties are joined in the adversary proceeding and a full record of the facts can be established. In addition, O2Cool's claims are not premised on a contingency but on a past event, specifically, the service of the Stoppage Notices, which purportedly gave O2Cool an interest in the Disputed Goods superior to any interest WSFS or the Term Loan Lenders may have.

Viewing the allegations in the complaint in the light most favorable to the plaintiff, the Court finds that O2Cool's claims for declaratory judgment based on the issuance of Stoppage Notices pursuant to section 2-705 of the UCC are in fact justiciable. Therefore, the Court will neither stay nor dismiss the claims under Rule 12(b)(1).

B. Motions to Dismiss for Failure to State a Claim

1. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P.

12(b)(6). A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint's factual allegations and requires the Court to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Instead, to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). The Court may also consider documents integral to the complaint's allegations and documents referenced in, or relied upon by, a complaint. See Angstadt v. Midd-West School Dist., 377 F.3d 338, 342 (3d Cir. 2004) ("[A]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in

the complaint may be considered without converting the motion to dismiss to one for summary judgment.”).

The moving party has the burden of demonstrating that dismissal of the complaint is appropriate. Joseph v. Frank (In re Troll Commc’ns, LLC), 385 B.R. 110, 117 (Bankr. D. Del. 2008).

The Motions to Dismiss are premised on (1) the asserted absence of an available remedy under the UCC where O2Cool failed to exercise the remedy of reclamation once the stoppage failed and the Disputed Goods were ultimately delivered to the Debtors, and (2) the purported untimeliness of the complaint, which was filed after the Challenge Proceeding Deadline set by the Final DIP Order. The Term Loan Lenders further assert that dismissal of O2Cool’s claims against them is appropriate because their claims are oversecured.

2. Availability of Remedy under the UCC[4]

If a seller discovers that a buyer is insolvent while its goods are in transit, section 2-705 of the UCC permits the seller to stop delivery of any shipment in the possession of the carrier. Del. Code Ann. tit. 6, § 2-705(1). As a general rule, section 2-705(3)(b) provides that after receiving a stoppage notice, the carrier must hold and deliver the goods only according to the seller’s instructions. Del. Code Ann. tit. 6, §

[4] Because the Debtors are incorporated in Delaware, the Court will apply the Delaware UCC for purposes of the Motions to Dismiss. Del. Code Ann. tit. 6, § 2-101, et seq. (2016).

2-705(3)(b). See Donegal Steel Foundry Co. v. Accurate Prods. Co., 516 F.2d 583, 589 (3d Cir. 1975) (acknowledging that section 2-705 of the UCC imposes a duty on a bailee to comply with the delivery instructions of the bailor).

The "right to stop delivery applies regardless of which party bears the risk of loss, and regardless of which party is deemed to have 'title' to the goods while they are in the carrier's possession." Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.), 740 F.2d 220, 225 (3d Cir. 1984). See In re Kellstrom Indus., Inc., 282 B.R. 787, 791 (Bankr. D. Del. 2002) (concluding that a seller's right to stop delivery of goods still in its possession is not impaired by the passage of title to the buyer).

Once the buyer is in receipt of the goods, however, the seller's remedy is limited to a claim for reclamation pursuant to section 2-702 of the UCC. Del. Code Ann. tit. 6, § 2-702(2). See Marin Motor Oil, 740 F.2d at 225 ("[T]he right of reclamation – a different right than the right to stop goods in transit – takes effect when the buyer 'receives' the goods."). In most cases, the demand for reclamation must be made within ten days after the buyer receives the goods. Del. Code Ann. tit. 6, § 2-702(2).[5] See In re R.F. Cunningham & Co., Inc., No. 805-84105-

[5] If the buyer files bankruptcy, however, the reclamation period may be extended. 11 U.S.C. § 546(c).

511, 2006 WL 3791329, at *2 (Bankr. E.D.N.Y. Dec. 21, 2006) ("The right of reclamation is not a self-effectuating remedy, and the failure to take action to protect reclamation rights can lead to loss of the right." (citing In re Waccamaw's Homeplace, 298 B.R. 233, 239 (Bankr. D. Del. 2003)). However, the right of reclamation is subordinate to the rights of a good faith purchaser from the buyer. Del. Code Ann. tit. 6, § 2-702(3).

WSFS and the Term Loan Lenders contend that the complaint fails to state a claim for relief against them because O2Cool failed to timely assert a claim for reclamation. They argue that once the Disputed Goods were in the Debtors' possession, O2Cool's right to stoppage was terminated and supplanted by the remedy of reclamation, even if the carrier negligently or willfully dishonored the Stoppage Notices. WSFS and the Term Loan Lenders assert that O2Cool failed to make a reclamation demand within the required ten-day period and therefore cannot do so now. They further argue that even if O2Cool had demanded reclamation, such demand would be subject to their rights as good faith purchasers. See, e.g., Trico, 282 B.R. at 328-29 ("A creditor with a floating security interest on the debtor's inventory can be a good faith purchaser for purposes of section 2-403."); Allegiance Healthcare Corp. v. Primary Health Sys., Inc. (In re Primary Health Sys., Inc.), 258 B.R. 111, 115 (Bankr. D. Del. 2001) (holding that absent bad faith, a holder of a prior perfected floating lien on

inventory is a good faith purchaser under the UCC).

O2Cool, however, contends that it was not required to pursue the remedy of reclamation because it properly exercised its stoppage rights under the UCC before the Debtors received the Disputed Goods. O2Cool relies on the Court's decision in Trico in arguing that once a seller exercises its stoppage rights prior to the buyer taking actual physical possession, the seller's rights are preserved, including having priority in those goods (and their proceeds) over a secured lender with a blanket lien. See Trico, 282 B.R. at 330 (holding that the right to stop delivery is not subject to the rights of a secured creditor of the buyer with a floating lien on the buyer's inventory).

In ruling on the Motions to Dismiss, the Court need not determine whether O2Cool will ultimately prevail, but whether it has sufficiently pleaded facts to support its claim. The Court concludes that O2Cool has stated a claim upon which relief can be granted.

O2Cool asserts that it properly exercised its stoppage rights pursuant to section 2-705 of the UCC while the Disputed Goods were in transit and cites case law in support of its argument that the Stoppage Notices preserved its rights in the Disputed Goods preventing such goods from becoming property of the Debtors or subject to the floating liens of WSFS and the Term Loan Lenders. Construing the complaint in the light most

favorable to O2Cool, the allegations "plausibly give rise to an entitlement to relief." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

The Court disagrees with WSFS and the Term Loan Lenders that O2Cool lacks a remedy under the UCC because, unlike a demand for reclamation, stoppage rights are not subject to the rights of a good faith purchaser. Ramco Steel, Inc. v. Kesler (In re Murdock Mach. & Eng'g Co. of Utah), 620 F.2d 767, 774 (10th Cir. 1980) (explaining that an unpaid seller's order to stop delivery of goods in the possession of a carrier or warehouseman is not cut off by the intervention of a third-party good faith purchaser). Moreover, the UCC does not permit a sale by the buyer free and clear of a seller's right to stop delivery without full payment in cash to the seller. Kellstrom, 282 B.R. at 793 n.4 ("Section 2-702(3) [of the UCC] subjects a seller's right to reclaim to section 2-403 which allows the sale to a good faith purchaser. There is no similar provision subjecting a seller's right to withhold and stop delivery to a sale to a good faith purchaser.").

3. Timeliness of the Complaint

WSFS and the Term Loan Lenders further argue that O2Cool's claims are barred by the Final DIP Order. They contend that the adversary proceeding, wherein O2Cool seeks to demonstrate that it has superior rights in the Disputed Goods based on the issuance

of the Stoppage Notices, falls within the broad definition of a Challenge Proceeding and accordingly, is subject to the Challenge Proceeding Deadline. WSFS and the Term Loan Lenders contend that they were entitled to rely on their bargained-for protection and should not have to repeatedly litigate challenges to their liens throughout the duration of the Debtors' bankruptcy proceedings. Spartan Mills v. Bank of Am. Ill., 112 F.3d 1251, 1253-58 (4th Cir. 1997) (rejecting creditor's attempt to circumvent expiration of the challenge period set by the bankruptcy court by collaterally attacking the lender's lien position in another jurisdiction); Baker Hughes Oilfield Operations, Inc. v. Summerline Asset Mgmt. LLC (In re S. Tex. Oil Co.), 434 B.R. 435, 442-44 (Bankr. W.D. Tex. 2010) (denying motion to intervene where the challenge proceeding deadline specified in the DIP financing order had passed); Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse (In re Champion Enters., Inc.), Adv. No. 10-50514 (KG), 2010 WL 3522132, at *15 n.13 (Bankr. D. Del. Sept. 1, 2010) (identifying in dicta an alternative basis to dismiss claims where the amended complaint was filed after the challenge proceeding deadline).

O2Cool argues, however, that the adversary proceeding does not fall within the definition of a Challenge Proceeding because its claims do not challenge the validity, extent, or priority of liens referenced in the Final DIP Order. Rather, O2Cool argues

that WSFS and the Term Loan Lenders' liens simply did not attach to the Disputed Goods because the latter never became property of the Debtors or their estates.  Accordingly, O2Cool argues that the Challenge Proceeding Deadline does not apply to this adversary proceeding.

The Court agrees with O2Cool that the adversary proceeding does not fall within the definition of a Challenge Proceeding. Accepting O2Cool's allegation that the Stoppage Notices were issued while the Disputed Goods were in transit as true, the Disputed Goods did not become property of the Debtors or their estates.  Del. Code Ann. tit. 6, § 2-705 cmt. 6 ("After an effective stoppage under this section the seller's rights in the goods are the same as if he had never made a delivery.").  See In re Nesto, 270 F. 503, 505 (3d Cir. 1921) ("[T]he unpaid seller who has parted with the possession of the goods has the right of stopping them in transit; that is to say, he may resume possession of the goods at any time while they are in transit, and he will then become entitled to the same rights in regard to those goods as he would have had if he had never parted with the possession.").  Therefore, O2Cool's claims do not raise an objection to or challenge of the validity, extent, perfection, or priority of the security interests and liens of WSFS and the Term Loan Lenders on property of the Debtors or their estates. Accordingly, the Court concludes that the Challenge Proceeding

Deadline is inapplicable to O2Cool's complaint and the Motions to Dismiss on this basis will be denied.

4. Oversecurity

The Term Loan Lenders independently assert that dismissal of O2Cool's claims against them is appropriate because they were oversecured and paid in full. Therefore, they contend that they received no benefit from the sale of the Disputed Goods and cannot be liable to O2Cool under any version of the alleged facts. In re Mall at One Assocs., L.P., 185 B.R. 981, 989 (Bankr. E.D. Pa. 1995) (determining, in the context of a surcharge action under section 506(c) of the Bankruptcy Code, that an oversecured creditor received no benefit from the debtors' actions that allegedly benefitted the estate).

The Term Loan Lenders' argument is not persuasive because the Court cannot conclude that they are oversecured based on the allegations in O2Cool's complaint, which it must accept as true at this stage. Ashcroft, 556 U.S. at 678. See also Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC), 497 B.R. 403, 412 (Bankr. S.D.N.Y. 2013) (A "secured creditor bears the burden of proving, by a preponderance of the evidence, that it is oversecured."). Therefore, dismissal of the claims against the Term Loan Lenders is not appropriate at this time.

III. CONCLUSION

For the reasons set forth above, the Court will deny the Motions to Dismiss filed by WSFS and the Term Loan Lenders.

An appropriate Order follows.

Dated: March 1, 2017

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge