**IN THE UNITED SATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., et al | |
| Debtors. | Case No. 16-10527 (MFW) |
| | Jointly Administered |
| O2COOL, LLC, a Delaware limited liability company, | |
| Plaintiff, | Adv. Proc. No. 16-51014 (MFW) |
| v. | |
| TSA STORES, INC., et al. | |
| Defendants. | |

**DECLARATION OF RONALD M. MAROTTA**

I, Ronald M. Marotta, hereby declare the following to be true under the penalties of perjury:

1. I am a Vice President in the International Division of defendant Yusen Logistics (Americas), Inc. ("Yusen"). As such, I am fully familiar with the facts and circumstances had herein. This declaration is based on my personal knowledge of the transactions at issue as well as my review of Yusen's business records with respect to same and my review of the documents attached to the Complaint in this Adversary Proceeding.

2. I submit this Declaration in support of the Joint Motion for Summary Judgment filed by defendants TSA Stores, Inc. ("TSA") and Yusen (collectively, the "Moving Defendants"). As set forth herein, Yusen was neither a bailee nor a carrier with respect to the goods at issue. I am informed by counsel that because Yusen was neither a carrier nor a bailee of the goods, the Yusen Stoppage Notices[1] issued by plaintiff, O2Cool, to Yusen were improper and had no effect.

3. Yusen provides logistics and supply chain management services including air

---

[1] Capitalized terms used and not defined herein shall have the same meaning ascribed in the Motion for Summary Judgment.

freight forwarding, ocean freight forwarding, origin cargo management, customs house brokerage, warehousing, and over the road and intermodal transportation to a wide range of industries.  Yusen is a New York corporation having its corporate headquarters in Secaucus, New Jersey.  Yusen is owned by Yusen Logistics Co. Ltd, ("YLK") a Japanese corporation, resulting from the 2010 combination of Yusen Air & Sea Service and NYK Logistics Japan.  YLK, through its subsidiaries, operates a global logistics and supply chain services network linking Asia, the Americas, Europe, Africa and Oceania.

4. Yusen performed origin cargo management and customs house brokerage services for TSA.  As part of these services Yusen provided TSA with cargo management software and a Dedicated Account Manager.  TSA implemented standard operating procedures with which Yusen was required to comply.  As part of the standard operating procedures TSA selected and approved all carriers and provided routing guidelines for all shipments.

5. TSA ordered goods from a number of different vendors including O2Cool.  Often the goods were manufactured overseas.  In the case of the O2Cool Sold Goods the goods were manufactured in China.  Vendors such as O2Cool had access to the cargo management system and software provided by Yusen to TSA.  Once a shipment is ready the vendor places a booking in the cargo management system to notify TSA and Yusen of the impending shipment.  At least 14 days before the expected shipping date Yusen reviews the booking to see if it complies with the business rules and operating procedures established by TSA.  If any exceptions or discrepancies exist then TSA must approve the shipment.

6. In the case of the goods at issue in this litigation, Yusen Logistics (Hong Kong) Inc. ("YL Hong Kong"), arranged for the transportation of the Sold Goods from China to the Distribution Centers, in accordance with TSA's routing guidelines and carrier matrix.  YL Hong

Kong served as a freight forwarder for TSA. TSA hired Shenzhen Yusen Freight Service Company Limited – OCM ("Shenzhen") to receive and consolidate the Sold Goods from O2Cool into shipping containers at the port of departure in China and deliver them to the appointed carrier's ocean terminal. If the Goods Sold constituted a full container then TSA directed O2Cool to deliver the Goods Sold to the appointed carrier's ocean terminal.

7. All of the Sold Goods were delivered by O2Cool to YL Hong Kong between January 13, 2016 and February 3, 2016, as evidenced by the Commercial Invoices and Packing Lists provided by O2Cool with the Sold Goods (collectively, the "O2Cool Shipping Documents"), attached as Exhibit 1. Upon receipt of the Sold Goods, YL Hong Kong issued forwarder's cargo receipts (collectively, the "Forwarder's Cargo Receipts"), attached as Exhibit 2. Thereafter, Shenzhen consolidated and delivered the Sold Goods to the designated carriers, and the carriers issued non-negotiable sea waybills/bills of lading (collectively, the "Carrier Waybills"), attached as Exhibit 3.

8. The O2Cool Shipping Documents indicated that O2Cool delivered the Sold Goods "FOB Yantian China." The O2Cool Shipping Documents also provided details about the specific Sold Goods and the vessel that was to transport the listed Sold Goods. Additionally, the O2Cool Shipping Documents indicated that O2Cool is the seller, TSA is the consignee and buyer, and Yusen is TSA's broker.

9. Each of the Carrier Waybills summarized the specifically listed Sold Goods in the O2Cool Shipping Documents, named the carrier, listed the port of loading, the port of discharge, the final places of delivery (i.e., one of the TSA Distribution Centers), and indicated that Shenzhen is the shipper, TSA is the consignee, and Yusen is the notice party (but that the carrier was not responsible for notifying this party).

10. According to the Complaint, O2Cool sent five stoppage notices to Yusen, dated February 12, 2016, February 15, 2016, February 25, 2016, and February 26, 2016 (collectively, the "Yusen Stoppage Notices"), attached to the Complaint as Exhibit D, to purportedly stop Yusen from delivering to TSA the specifically listed Sold Goods indicated in the Yusen Stoppage Notices. However, at no time after receipt of any of the Yusen Stoppage Notices was any Yusen entity ever in possession of the listed Sold Goods.

11. Attached as Exhibit 4 is a report generated by the origin cargo management software on February 18, 2016 which shows, among other things, the date on which each O2Cool shipment was (i) received by Shenzhen, (ii) loaded on the carrier at the port of Yantian, and (iii) the actual sail date of the carrier. Yusen caused this report to be generated due to its receipt of a Yusen Stoppage Notice. As can be seen from this report, the actual sail dates of each of the shipments occurred between January 26, 2016 and February 10, 2016. Thus, the Sold Goods were all in the possession of the respective carriers and at sea before O2Cool sent the earliest of the Yusen Stoppage Notices.

12. In response to the Yusen Stoppage Notices, Yusen's counsel advised O2Cool that it was only a freight forwarder and not a carrier or bailee, and that it did not have possession of the Sold Goods.[2] *See* Exhibit 5.

13. Upon arrival at the destination ports, Yusen served as customs house broker for TSA and filed the necessary paperwork to import the Sold Goods into the United States. At no time during this process was Yusen in possession of the Sold Goods. The Sold Goods at all

---

[2] YL Hong Kong served as the freight forwarder with respect to the Sold Goods. Yusen, the actual recipient of the Yusen Stoppage Notices, only served as the customs house broker with respect to the Sold Goods.

4

times remained in the possession of the carrier until their delivery to TSA. Yusen did not provide any transportation or warehouse services for the Sold Goods in the United States.

14. None of the Yusen entities involved retained possession of any Sold Goods after they were loaded on the respective carrier's ships. None of the Yusen entities, including Yusen, YL Hong Kong, or Shenzhen ever possessed any of the Sold Goods after they reached the United States. At all times the Sold Goods remained in the possession of the respective carriers and under the control of TSA to direct to where they were transported.

**Wherefore**, it is respectfully requested that the Moving Defendants' Motion for Summary Judgment be granted in its entirety together with such other and further relief as the Court deems just and proper under the circumstances.

Dated: Secaucus, New Jersey
February 17, 2017

_Ronald M. Marotta_
Ronald M. Marotta