**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TSAWD HOLDINGS, INC., et al. | ) | Case No. 16-10527 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| O2COOL, LLC, a Delaware limited liability company, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 16-51014 (MFW) |
| | ) | |
| TSA STORES, INC. BANK OF AMERICA, N.A.; WELLS FARGO BANK, NATIONAL ASSOCIATION; WILMINGTON SAVINGS FUND SOCIETY, FSB; YUSEN LOGISTICS (AMERICAS) INC.; and OOCL (USA), INC., | ) ) ) ) ) ) | D.I. 1, 69, 70, 77, 81, 82, 83, 86, & 90 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION</u>**[1]

Before the Court is a Joint Motion for Summary Judgment[2] filed by TSA Stores, Inc. ("TSA Stores") and Yusen Logistics

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 52 of the Federal Rules of Civil Procedure, which is incorporated into Rule 7052 of the Bankruptcy Rules of Procedure. Fed. R. Civ. P. 52(a)(3); Fed. R. Bankr. P. 7052.

[2] Two other motions for summary judgment were filed in this adversary proceeding by Bank of America, N.A. and Wells Fargo Bank, N.A., respectively. (Adv. D.I. 65; Adv. D.I. 66; Adv. D.I. 71.) Because the Court is granting the instant Motion, it need not decide the other two motions which seek relief if the instant Motion is denied.

(Americas) Inc. ("Yusen") (collectively, the "Movants") in an adversary proceeding brought by O2Cool, LLC ("O2Cool"). In its Complaint, O2Cool seeks a determination that, <u>inter alia</u>, certain goods that were shipped to TSA Stores from O2Cool were not property of the estate and have, consequently, been converted. The Movants contend that they are entitled to a ruling that these goods are property of the estate. Because the Court finds that the Movants have satisfied their burden that there is no genuine dispute of material fact and that they are entitled to a finding in their favor, the Court will grant the Motion for Summary Judgment for the reasons set forth below.

I. <u>BACKGROUND</u>

    A. <u>Factual History</u>

On March 2, 2016, TSA Stores and its affiliates (the "Debtors")[3] filed voluntary chapter 11 petitions under the Bankruptcy Code. The Debtors were in the sporting goods and retail apparel business and had their principal place of business in Colorado. O2Cool designs, manufactures, and distributes specialized consumer items involving hydration, cooling, patio,

---

[3] The Debtors include TSAWD Holdings, Inc. (formerly known as the Sports Authority Holdings, Inc.), Slap Shot Holdings, Corp., TSA Stores, Inc., TSA Ponce, Inc., and TSA Caribe, Inc.

and beach solutions. In 2015, one of the Debtors, TSA Stores, purchased products (the "Goods") from O2Cool pursuant to a 2015 Import Vendor Deal Sheet (the "Vendor Deal Sheet"). TSA Stores and O2Cool agreed to F.O.B. origin shipping terms in a Vendor Relationship Guide (the "Vendor Guide") that was incorporated by reference into the Vendor Deal Sheet. (Adv. D.I. 1-2, Ex. B, at 3.) Pursuant to their agreement, the Goods, which originated in China, were delivered to a freight forwarder in Yantian, China, and transported to distribution centers in the U.S. (Adv. D.I. 70, Ex. 1.)

TSA Stores hired several parties – Yusen, Yusen Logistics (Hong Kong) Inc. ("YL Hong Kong"), Shenzen Yusen Freight Service Company Limited-OCM ("Shenzen"), OOCL, and Orient Overseas Container Line Limited ("Orient Overseas") – to transport goods purchased from various vendors. Yusen provided logistics and supply chain management that included origin cargo management and customs house brokerage services. Vendors were required to notify TSA Stores and Yusen about impending shipments to TSA Stores. YL Hong Kong was the freight forwarder in Yantian for TSA Stores. Shenzen consolidated the goods into containers and delivered them to their designated carriers.

Pursuant to the agreement with TSA Stores, O2Cool delivered several shipments to YL Hong Kong in Yantian between January 13

and February 3, 2016.  (Adv. D.I. 70, Ex. 1.)  Upon receipt, YL Hong Kong issued forwarder cargo receipts, and Shenzen consolidated and delivered the Goods to their designated carriers.  Orient Overseas was one carrier that received the Goods for shipment and issued non-negotiable seaway bills or bills of lading.  (Adv. D.I. 70, Ex. 3.)  The bills of lading issued by Orient Overseas did not list O2Cool, but instead stated that the shipper was Shenzen.  Orient Overseas' vessels departed with the Goods between February 1 and February 10, 2016.

Between February 12 and February 26, 2016, O2Cool sent Yusen five Stop Shipment Notices, pursuant to section 2-705 of the Uniform Commercial Code (the "UCC").  At the time Yusen received the Stop Shipment Notices, the Goods were not in Yusen's possession.  Yusen subsequently notified O2Cool that it was not a carrier for the Goods.

O2Cool forwarded the Stop Shipment Notices to OOCL on or about February 26, 2016, and OOCL acknowledged receipt thereof.  However, Shenzen, YL Hong Kong, Orient Overseas and none of the other designated carriers were sent the Stop Shipment Notices from O2Cool, and the Goods were delivered to TSA Stores at their distribution centers.

    B.    <u>Procedural Background</u>

O2Cool commenced this adversary proceeding against TSA

Stores, Yusen, and others in the Debtors' chapter 11 bankruptcy case on June 21, 2016. In Count I, O2Cool seeks a determination that the Goods are not property of the estate and that certain parties are required to complete an accounting of such Goods and proceeds derived therefrom. (Adv. D.I. 1.) In Count II, O2Cool requests a judgment stating that it has rights to the Goods superior to certain lenders. Id. In Count III, O2Cool seeks a determination that the Defendants have converted its property, namely, the Goods. Id.

Yusen and TSA Stores filed answers to the Complaint. On March 3, 2017, they jointly moved for summary judgment on all counts pursuant to Rule 56. Briefing is now complete, and the matter is ripe for consideration.

II.  JURISDICTION

The Court has jurisdiction over this core matter. 28 U.S.C. §§ 1334(b) and 157(b)(2)(B) (core proceedings include "allowance or disallowance of claims against the estate or exemptions from property of the estate"). No party has challenged the Court's jurisdiction. The Court may enter a final order when parties have either expressly or impliedly consented. Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1947-48 (2015) ("Nothing in the Constitution requires that consent to

5

adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ." (internal quotations omitted)).

III. DISCUSSION

    A.    Legal Standard

Bankruptcy Rule 7056 makes Rule 56 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). Rule 56 allows a party to move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). A court must grant summary judgment when the movant has shown "that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Id. A genuine issue of material fact exists when a reasonable fact finder could rule in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986).

The initial burden is on the moving party to show that no genuine issue of material fact exists based on the evidentiary record as a whole. Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986). If the moving party satisfies this burden, then the non-moving party is required to set forth specific facts showing that

there is a genuine issue for trial.  <u>Matsushita</u>, 475 U.S. at 587.  A party may not rely on "mere allegations or denials of his pleading."  <u>Norfolk S. Corp. v. Oberly</u>, 632 F. Supp. 1225, 1231 (D. Del. 1986).  Rather, information in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" is required.  Fed. R. Civ. P. 56(c).  Inferences drawn from the underlying facts are to be resolved in the light most favorable to the non-moving party.  <u>Matsushita</u>, 475 U.S. at 587.

    B.   <u>Parties' Arguments</u>

        1.   <u>Title Passed to the Debtor</u>

It is the Movants' position that summary judgment should be granted on Counts I (Determination of Property of the Estate) and Count III (Conversion) as a matter of law because O2Cool's right to stop delivery ceased when title to the Goods passed to TSA Stores.  Their contention rests on the terms of the Vendor Guide, which provided that title to the Goods passed to TSA Stores when O2Cool delivered them to YL Hong Kong for shipment.

    O2Cool disagrees and asserts that it had the right to stop the Goods' shipment regardless of whether TSA Stores had title because the Goods were still in the carriers' possession.

The UCC states that a seller may stop goods from being delivered to a buyer when the seller discovers that the buyer is insolvent and the goods are still in a carrier's or bailee's possession. Del. Code Ann. tit. 6, § 2-705(a) (West 2017). This right to stop shipment exists until the buyer receives the goods. Id. at § 2-705(b). "Receipt" occurs when the buyer or the buyer's designated representative takes actual physical possession of the goods. Id. at § 2-103(1)(c) & § 2-705 cmt. 2. Goods that are in a common carrier's possession for delivery to the buyer have not been received by the buyer. Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.), 740 F.2d 220, 222 (3d Cir. 1984). A seller's right to stop goods from being delivered persists until the goods reach their final place of delivery. Del. Code Ann. tit. 6, § 2-705 cmt. 2.

Because the Goods were not yet in the physical possession of TSA Stores when O2Cool sent the Stop Shipment Notices, the Court concludes that O2Cool still had the right to stop shipment of the Goods.

The Movants' citation to Leggett is not persuasive. Leggett & Platt, Inc. v. Ostrom, 215 P.3d 1135, 1142-43 (Colo. App. 2010). In Leggett, the issue was, inter alia, whether there was a taxable event, not whether a seller could stop goods in transit. Id. There, a taxpayer hired a carrier to transport

goods from the taxing jurisdiction to a location outside that jurisdiction.  Id. at 1141-43.  The Leggett Court concluded that merely receiving possession of the goods vis-a-vis a carrier located in the taxing jurisdiction was sufficient to impose tax liability on the taxpayer under that jurisdiction's tax code, regardless of whether title had passed to the taxpayer.  Id. at 1143 (explaining that title is not dispositive as to whether there was a taxable event because the taxpayer received possession when the seller delivered the goods to the taxpayer's carrier).  Leggett does not provide persuasive authority on the issue of whether O2Cool properly exercised its right to stop shipment under the UCC.

Here, O2Cool had delivered the Goods to YL Hong Kong, and the Goods were still in transit when O2Cool sent the Stop Shipment Notices.  Marin, 740 F.2d at 224-26 (3d Cir. 1984) (explaining that a common carrier, not the buyer, is in possession of the goods when the seller gives the goods to the common carrier for delivery to the buyer).  Hence, O2Cool's right to stop shipment continued until the Goods were in the physical possession of TSA Stores, not when title passed.

    2.   Effectiveness of Stop Shipment Notices

        a.   Parties served with Stop Shipment Notices

Alternatively, the Movants argue that the Stop Shipment


Notices that O2Cool sent to Yusen and OOCL were ineffective because they were not sent to the proper party, i.e. the bailee of the goods.  They assert that Yusen was neither a bailee nor a carrier in possession of the Goods and that OOCL was neither a carrier nor acting as an agent for one.

The UCC states that a seller has the right to stop delivery of goods upon discovering that a buyer is insolvent.  Del. Code Ann. tit. 6, § 2-702(1) (West 2017).  Under section 2-705, a seller may stop shipment by notifying the bailee so as to "enable the bailee by reasonable diligence to prevent delivery of the goods."  Id. § 2-705(3)(a).  The UCC defines a bailee as "a person that by a warehouse receipt, bill of lading, or other document of title acknowledges possession of goods and contracts to deliver them."  Id. § 7-102(a)(1).  Carriers are bailees.  Id. § 7-102(a)(2).

In this case, Yusen was not listed as a carrier on the bills of lading, only Orient Overseas was listed as the carrier.  Moreover, after it received the Stop Shipment Notices, Yusen notified O2Cool that it was neither a carrier nor in possession of the Goods.  (Adv. D.I. 70, Ex. 5.)

O2Cool admits this.  (Adv. D.I. 77, at 5.)  However, O2Cool asserts that OOCL was a proper party to receive the Stop Shipment

Notices because OOCL was an agent for the carrier, Orient Overseas, and, thus, Orient Overseas received the notice.

The Court agrees with O2Cool and concludes that Overseas Orient did receive the Stop Shipment Notices when they were delivered to its agent, OOCL. See Restatement (Second) of Agency § 268 cmt. a (Am. Law. Inst. 2017) (stating that "the notice of stoppage in transit" must be "directed to the party to be affected, to his agent authorized to receive it[,] or to a person upon whom the notifier has a right to rely as one so authorized" to receive such a notice); David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2-705:33 (3d ed. 2016) (stating that "notice may be given to an agent of the carrier or bailee who has actual custody of the goods" and, "[i]f the seller [can] determine which agent of the carrier or bailee has the goods in actual custody[] and can reach that agent," then a seller may "notify that agent").

    b. Consignors listed on Bill of Lading

The Movants contend, however, that even if OOCL was an agent for Orient Overseas, the Stop Shipment Notices were still not effective to prevent the Goods from being shipped by the carriers or received by the Debtors because O2Cool was not listed as the consignor on the bills of lading. The Movants argue that section 2-705(3)(d) of the UCC only requires compliance with a stop

11

shipment notice when it is received from the consignor listed on the non-negotiable bills of lading that were issued.

According to O2Cool, the mere fact that its name does not appear on the bills of lading as the consignor is inconsequential because it was the actual owner and seller of the Goods that were shipped.

The Court agrees with the Movants on this point. Section 2-705(3)(d) of the UCC states that "a carrier who has issued a non-negotiable bill of lading is not obliged to obey a notification to stop received from a person other than the consignor." Del. Code Ann. tit. 6, § 2-705(3)(d) (emphasis added). Consignor is defined as "a person named in a bill of lading as the person from which the goods have been received for shipment." Id. § 7-102(a)(4).

Here, Orient Overseas issued non-negotiable bills of lading showing Shenzen as the "the person from which the goods have been received for shipment." Thus, the Court concludes that OOCL was not required to obey O2Cool's Stop Shipment Notices under section 2-705(3)(d). See generally Oak Harbor Freight Lines, Inc. v. Sears Roebuck & C o., 420 F. Supp. 2d 1138, 1148 (W.D. Wash. 2006) ("The bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." (citing

12

S. Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342(1982)).

Therefore, the Court concludes that summary judgment in favor of the Movants on Count I is warranted because the Stop Shipment Notices were not effective to stop shipment and the Goods became property of the estate when they were delivered to TSA Stores.  See 11 U.S.C. § 541(a) (West 2014) (defining estate property as including "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case").

### 3. Right to Reclamation

The Movants assert that the Goods remained property of the Debtors' estates and could be sold by them because O2Cool failed to exercise its reclamation rights after TSA Stores received the Goods.  Therefore, they ask for judgment on Count III (conversion).

A seller's right to stop goods from being delivered to a buyer ceases once the buyer receives the goods.  Del. Code Ann. tit. 6, §2-705(2)(a).  Instead, a seller has only the right of reclamation once a buyer takes possession of the goods.  Id. § 2-702(2).  UCC section 2-702 states that "[w]here the seller discovers that the buyer has received goods on credit while

13

insolvent he or she may reclaim the goods upon demand made within ten days after the receipt." Id.

O2Cool admits that it did not timely seek to reclaim the Goods. As a result, the Court concludes that TSA Stores and Yusen are entitled to summary judgment on Count III of the Complaint.

### 4. Priority of Rights in the Goods

The Movants also argue that because the Stop Shipment Notices were ineffective, O2Cool did not retain any rights in the Goods that are superior to the Lenders. They therefore ask for summary judgment on Count II (Determination of Lien Priority) of the Complaint.

O2Cool argues that it holds superior rights to the Goods relative to the secured lenders in the Debtors' bankruptcy case. That argument is based on the Cargill case. See Cargill Inc. v. Trico Steel Co., L.L.C. (In re Trico Steel Co. L.L.C.), 282 B.R. 318, 327-30 (Bankr. D. Del. 2002). The Court in Cargill explained that a seller that properly exercises its right to stop shipment is not subject to a buyer's secured creditors' rights in the goods. Cargill, 282 B.R. at 329-330.

The Court concludes, however, that the Cargill case is inapplicable because the Court has found that O2Cool's Stop Shipment Notices were not effective to prevent TSA Stores from obtaining title or possession of the Goods.

While O2Cool asserts that there is a factual dispute as to when TSA Stores received actual possession of the Goods, the Court finds that dispute is not material because the Stop Shipment Notices never became effective. Therefore, the Court concludes that the Movants are entitled to summary judgment on Count II of the Complaint as well.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant the Joint Motion for Summary Judgment filed by TSA Stores and Yusen and enter judgment in their favor on all Counts of the Complaint.

An appropriate Order follows.

Dated: September 20, 2017                BY THE COURT:

*[signature: Mary F. Walrath]*
Mary F. Walrath
United States Bankruptcy Judge